ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Edwin E. Burks, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to our order in In re: Burks, 05-0917 (La.5/3/05), 900 So.2d 840.
UNDERLYING FACTS
The ODC filed two sets of formal charges against respondent. The first set of formal charges, consisting of two counts and bearing the disciplinary board’s docket number 99-DB-128, was filed on December 23, 1999. The second set of formal charges, consisting of four counts and bearing the disciplinary board’s docket number 05-DB-050, was filed on May 16, 2005. The two sets of formal charges were consolidated by order of the hearing committee chair dated July 20, 2005.
During the hearing in this matter, the ODC formally dismissed Count II of 99-DB-128, as well as Counts I and III of 05-DB-050. Accordingly, no further reference will be made to those matters in this opinion.

99-DB-128

Count I — The Timpton Matter
Respondent represented five clients whom he referred to Wanda Timpton, M.D. for medical treatment. Respondent had in each case guaranteed payment to Dr. | /Timpton upon settlement of the clients’ claims. Nevertheless, upon receiving the settlement funds in 1994, respondent failed to promptly pay the medical expenses to Dr. Timpton. Respondent also failed to maintain the funds due to Dr. Timpton in his client trust account, and instead commingled those funds with his *299 personal funds and converted the funds to his own use. Respondent ultimately paid Dr. Timpton the funds owed on behalf of his five clients, as follows:
In the case of Theodore Jones, respondent withheld $1,240 from his client’s settlement in July 1994 to pay Dr. Timpton. In March 1996, respondent paid the full amount due to Dr. Timpton in cash.
In the case of Erika Frederick, respondent withheld $930 from his client’s settlement in May 1994 to pay Dr. Timpton. In March 1996, respondent paid the full amount due to Dr. Timpton in cash.
In the case of Nelletha Hughes, respondent withheld $740 from his client’s settlement in August 1994 to pay Dr. Timpton. In March 1996, respondent paid the full amount due to Dr. Timpton in cash.
In the case of Lorie Kirk and her minor daughter, Alayna, respondent settled his clients’ case on July 29, 1994. Respondent deposited the settlement funds into his client trust account on August 8, 1994. Respondent paid Ms. Kirk her portion of the settlement (a total of $3,461) on September 28, 1994 and withheld a total of $2,410 to pay Dr. Timpton. In April 1995, respondent negotiated a reduction of the medical bills. On April 28, 1995, respondent sent Dr. Timpton a check in the amount of $1,745, and he returned the remaining $665 to Ms. Kirk. However, during the period of time that respondent held the funds owed to Dr. Timpton and Ms. Kirk, the balance of his trust account fell below the amount due them.
The ODC alleged that respondent’s conduct in this matter violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping | .^property of clients or third persons), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

05-DB-050

Count II — The Campaign Finance Reporting Misconduct
In 1994, respondent ran unsuccessfully for a judgeship on the Second City Court of New Orleans. Thereafter, respondent failed to file the requisite campaign finance disclosure reports for the calendar years 1996, 1997, 1998, and 1999.[1] As a result of respondent’s failure to file the reports, the Louisiana Board of Ethics assessed late fees against him totaling $49,620. In 2000, the Board of Ethics conducted a hearing on respondent’s request to reduce the late fees, and thereafter reduced the total late fees to $5,000. Respondent finally paid this amount in full on September 2, 2004. Respondent also failed to cooperate with the ODC in its investigation of this matter.
The ODC alleged that respondent’s conduct in this matter violated the following provisions of the Rules of Professional Conduct: Rules 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation).
*300 14Count IV — Respondent’s Federal Conviction
On January 27, 2005, a federal grand jury returned an indictment charging respondent with one count of computer fraud, a felony, in violation of 18 U.S.C. § 1030(a)(4).[2] United States v. Edwin E. Burks, No. 05-026 on the Criminal Docket of the United States District Court for the Eastern District of Louisiana. On March 30, 2005, respondent pleaded guilty to the charge set forth in the indictment. On July 27, 2005, respondent was sentenced to three years of probation. He was also fined $1,000 and was ordered to perform 100 hours of community service.
According to the factual basis for respondent’s guilty plea, respondent was employed as an Assistant City Attorney for the City of New Orleans for approximately twelve years, the last eight of which he was assigned to Section “C” of Traffic Court, where he prosecuted individuals who had been issued traffic citations within the City of New Orleans by various law enforcement agencies. From March 11, 2004 to April 8, 2004, respondent met with an undercover FBI agent whom respondent believed to be a taxi driver who wanted to resolve several outstanding traffic citations. Respondent accepted $1,000 in cash from the man and, in return, agreed to nolle prosequi the traffic citations in question. This exchange was audio and video recorded and under the surveillance of FBI agents. Respondent subsequently did dismiss the traffic citations, and provided to the FBI agent written confirmation of that fact.[3]
|BThe ODC alleged that respondent’s conduct in this matter violated Rule 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
Following the institution of formal charges by the ODC, respondent filed an answer admitting his conviction, but generally denying any other misconduct. This matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on April 28, 2006.

Hearing Committee Report

Based on the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:
Count I of 99-DB-128 (the Timpton matter) — In or around 1994, respondent represented Theodore Jones, Erika Frederick, Nelletha Hughes, Lorie Kirk, and Alayna Kirk in various legal matters. Respondent referred all of these clients to Dr. Wanda Timpton for medical treatment, and he guaranteed payment to Dr. Timp-ton upon the settlement of the clients’ legal matters. When the matters were settled, respondent did not pay Dr. Timp-ton promptly. Further, respondent admitted that he commingled and converted client and third-party funds, in that he diverted the funds from his trust account *301 to his operating account and made personal use of that money.
Based on these factual findings, the committee determined that respondent violated Rules 1.15, 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. The committee further found that respondent knowingly violated duties owed to his clients, the legal system, and the profession.
| fiCount II of 05-DB-050 (the campaign finance reporting misconduct)-In connection with his 1994 judicial campaign, respondent was required to provide an accounting of any funds he received and any outstanding debt he carried. After respondent lost the race for judge, he failed to file the periodic accounting required by law. The Ethics Board fined respondent for failing to file the required reports. Respondent did not file the reports because he neither received contributions nor expended money from his campaign account. Rather, the money due to the campaign was money respondent personally lent to the campaign. On June 6, 1999, The Times-Picayune reported on the Ethics Board fine lodged against respondent and others. The ODC initiated an investigation after the newspaper report. Respondent and the Ethics Board reached a compromise in or about June 2000. The total amount of the fine was reduced to $5,000 and that amount was eventually paid by respondent on September 2, 2004.
Based on these factual findings, the committee determined that respondent violated Rules 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct. The committee did not find that respondent failed to respond to a lawful demand for information from a disciplinary authority, in violation of Rule 8.1(b), or failed to cooperate with the ODC in its investigation, in violation of Rule 8.4(g).
Count IV of 05-DB-050 (respondent’s federal conviction) — Respondent does not dispute his conviction of one count of computer fraud. However, at the hearing, respondent testified that he, at no time, solicited any money to dismiss the traffic tickets. In fact, respondent stated that he would have dismissed the tickets for no remuneration and that it was only after he agreed to dismiss the tickets that money was mentioned. Respondent also testified that he did not confect a “scheme” to defraud as suggested by the ODC.
|7Based on these factual findings, the committee determined that respondent committed a “serious crime” under Supreme Court Rule XIX, § 19. Respondent’s conduct also violated Rules 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
The committee determined that the baseline sanction for respondent’s misconduct is disbarment. In mitigation, the committee recognized the following factors: absence of a prior disciplinary record, personal or emotional problems,[4] and remorse. The committee also noted respondent’s assistance with the federal investigation into matters at the Orleans Parish Traffic Court. In aggravation, the committee found the following factors are applicable: dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victim (Dr. Timpton), substantial experience in the practice of *302 law, and illegal conduct (relating solely to the criminal conviction). The committee also observed that respondent’s conduct has reflected poorly on the legal profession.
Based on these findings, two members of the committee recommended- that respondent be disbarred. The third member of the committee dissented and would recommend permanent disbarment ■ for respondent’s criminal conviction.
Both respondent and the ODC filed objections to the hearing committee’s findings. The ODC also objected to the leniency of the sanction recommended by the committee.
| ⅝Disciplinary Board Recommendation
After reviewing this matter, the disciplinary board found that the hearing committee’s factual findings are not manifestly erroneous. The board determined that respondent violated the Rules of Professional Conduct as charged in the formal charges, with the exception of Count II of 05-DB-050 (the campaign finance reporting misconduct), in which the board agreed with the committee that respondent did not violate Rules 8.1(b) and 8.4(g). The board found that respondent knowingly and intentionally violated duties owed to the public and to the legal system. Respondent failed to turn over third-party funds in five instances, failed to file accountings relative to his judicial campaign,[5] and on two separate occasions, accepted $500 for his aid in dismissing traffic citations. The public’s confidence in the justice system and the legal system is surely shaken when an officer of the court accepts money to “fix” outstanding traffic citations. The baseline sanction for respondent’s misconduct is disbarment.
In mitigation, the board recognized the following factors: absence of a prior disciplinary record, personal and emotional problems, cooperation with the federal investigation resulting in additional arrests, imposition of other penalties or sanctions, and remorse. The board found the following aggravating factors are applicable: dishonest or selfish motive, multiple offenses, illegal conduct, and substantial experience in the practice of law.
Turning to the issue of an appropriate sanction for respondent’s misconduct, the board considered In re: Rome, 01-2942 (La.9/26/03), 856 So.2d 1167.[6] The | .¡respondent in Rome was an assistant district attorney who accepted approximately $3,000 in cash from individuals on six to eight occasions in payment of outstanding traffic citations and court costs. Rome kept these funds for himself and did not remit the payments to the proper authority. Rome subsequently pleaded guilty to one felony count of malfeasance in office. In permanently disbarring Rome, this court noted that “malfeasance in office while serving as an assistant district attorney is among the most serious misconduct an attorney can commit.”
Considering that in this case the aggravating factors outweigh the mitigating factors, and that respondent abused the authority placed in him in a position of public trust, the board found that permanent disbarment is appropriate under Guidelines 2 (intentional corruption of the judicial pro *303 cess) and 7 (malfeasance in office which results in a felony conviction and involves fraud) of the permanent disbarment guidelines.
Based on this reasoning, the board recommended respondent be permanently disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come ■within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990).
In the instant case, respondent stands convicted of computer fraud. This crime is a felony under federal law and clearly warrants serious discipline. Therefore, the only remaining issue is the appropriate sanction for respondent’s misconduct. The resolution of that issue depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
The applicable baseline sanction for respondent’s misconduct is clearly disbarment under both the ABA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence. However, the ODC contends that respondent’s conduct is so egregious that permanent disbarment should be imposed. The disciplinary board agreed, finding that Guidelines 2 and 7 of the permanent disbarment guidelines are applicable.
On two separate occasions, respondent accepted $500 bribes in exchange for dismissing a case in Traffic Court, where he served as the prosecutor. We cannot and will not condone conduct by an attorney that is so plainly calculated to frustrate the administration of justice.
Based on this reasoning, we will accept the disciplinary board’s recommendation and impose permanent disbarment.[7]
lnDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Edwin E. Burks, Louisiana Bar Roll number 3687, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
*304 CALOGERO, C.J., would simply disbar the respondent.
JOHNSON, J., would disbar, but not permanently.

. On reports filed in connection with the 1994 election, respondent disclosed the receipt of a $10,000 loan from himself to his campaign. Therefore, pursuant to La. R.S. 18:1495.4(D)(1), respondent was required to file supplemental reports annually, until a report was filed which showed that he no longer had any outstanding loans. In 2000, respondent submitted an amended report to the Board of Ethics which re-characterized the loan as a transfer of personal funds to his campaign. This amendment essentially eliminated the requirement that respondent file supplemental reports in connection with the 1994 election.

. 18 U.S.C. § 1030(a)(4) provides that it is a crime to “knowingly and with intent to defraud, access[ ] a protected computer without authorization, or exceed[ ] authorized access, and by means of such conduct further[ ] the intended fraud and obtain[ ] anything of value, ...”

. Respondent’s actions constituted computer fraud because his dismissal of the traffic citations affected the Louisiana Office of Motor Vehicles Driver Management Database (DMB), where all entries involving an individual’s driving record are maintained. The DMB is a protected computer under federal law, as a dismissal or finding of nolle prosequi of a traffic citation in New Orleans Traffic Court results in an inaccurate or incomplete driving record in the DMB, thereby affecting interstate and foreign commerce.

. With regard to the Timpton matter, the committee found that respondent’s divorce, his alcoholism, and a fire at his law office were all personal problems to be considered in mitigation. However, the committee specifically noted that with regard to respondent’s illegal conduct at Traffic Court, he had acknowledged that no personal problems contributed to, caused, or influenced his conduct. Rather, respondent simply blamed his "stupidity.”

. The board noted that respondent’s failure to file appropriate accountings regarding his judicial campaign was widely known in the local community through newspaper reports.

. The board also reviewed the prior jurisprudence of this court in cases in which the respondent attorney was convicted of a serious crime, but noted that such cases do not involve an attorney employed in a position of public trust, such as an assistant city attorney or an assistant district attorney.

. Because the imposition of permanent disbarment is the most severe sanction that can be imposed on respondent, having the effect of forever removing him from the bar of this state, we find it is not necessary to discuss the misconduct charged in the remaining counts of the formal charges. In re: Stephens, 07-0180 (La.4/27/07), 955 So.2d 140, citing In re: O’Keefe, 03-3195, pp. 11-12 (La.7/2/04), 877 So.2d 79, 86.