FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #075

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of December, 2016**, are as follows:

**PER CURIAM**:

2016-B -1253    IN RE: GREGORY F. WILLIAMS, SR.

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Gregory F. Williams, Louisiana Bar Roll number 25538, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

WEIMER, J., concurs in the result.

SUPREME COURT OF LOUISIANA

NO. 2016-B-1253

IN RE: GREGORY F. WILLIAMS, SR.

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Gregory F. Williams, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. *In re: Williams*, 13-0234 (La. 2/8/13), 107 So. 3d 613.

**UNDERLYING FACTS**

At all times pertinent to these proceedings, respondent was employed as an assistant district attorney for the 15th Judicial District. In 2007, the district attorney, with the consent of a district judge, set up a process in the 15th JDC by which a select group of individuals could receive what was referred to as "immediate 894 pleas" in DWI cases. In order to qualify for the "immediate 894 plea," the district attorney required that the charged individual complete all legal prerequisites prior to entering the plea, including community service, a substance abuse program, and a driver safety program. The individual cases selected for "immediate 894 pleas" were withheld from, or removed from, the normal DWI docket, and special court sessions were held to handle these cases. Respondent served as the prosecuting attorney for all cases disposed of by "immediate 894 plea." The DWI defendant, at the time of the "immediate 894 plea," would appear

with certifications that he/she had completed the community service requirements, the substance abuse program, and the driver safety program. The documents would be filed into the court record at the time of the guilty plea. Pursuant to La. Code Crim. P. art. 894, the judge would then immediately grant the 894 motion dismissing the conviction, which served as an acquittal, thereby allowing the DWI defendant to have his/her driving privileges immediately reinstated.

Beginning in 2010, respondent became aware that personnel in the District Attorney's Office and a non-lawyer by the name of Robert Williamson were utilizing the "immediate 894 plea" sessions to provide favorable dispositions of DWI cases for defendants willing to pay Mr. Williamson. Respondent was aware that the individuals who were being allowed to plead in the "immediate 894 plea" sessions were paying Mr. Williamson, and he also knew that Mr. Williamson had never been licensed to practice law. In 2010 and 2011, respondent accepted a series of gifts and a cash payment from Mr. Williamson, "intending to be influenced and rewarded in connection with" the DWI scheme. The gifts included an autographed New Orleans Saints hat, bicycles for respondent and his family members, and clothing for respondent, ranging from shoes to business suits. In December 2011, Mr. Williamson gave respondent a cash payment of $500.

On January 16, 2013, the United States Attorney for the Western District of Louisiana filed a bill of information charging respondent with one count of conspiracy to commit bribery. The following day, respondent pleaded guilty as charged. According to the factual basis for the guilty plea, respondent "was aware that [Mr. Williamson] was receiving payments from the individuals being placed in the 'immediate 894 sessions.' Based upon the large number of [Mr. Williamson's] 'clients' being placed in the 'immediate 894 sessions,' [respondent] knew that the amount of money involved in the series of transactions totaled far in excess of $5,000." On July 10, 2015, United States District Judge Elizabeth Foote sentenced

2

respondent to two years of supervised probation for his participation in the scheme, and ordered him to participate in a monitoring program.[1]

## DISCIPLINARY PROCEEDINGS

In February 2013, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

Respondent answered the formal charges. He admitted to the allegations in the charges, but denied providing "a quid pro quo or benefit in exchange for any gift he may have received."

This matter then proceeded to a formal hearing, which was conducted by the hearing committee in May 2015. Prior to the hearing, the ODC filed a pre-hearing memorandum in which it argued that the appropriate sanction in this matter is permanent disbarment. In his pre-hearing memorandum, respondent argued that he should be suspended from the practice of law for three years, retroactive to February 8, 2013, the date of his interim suspension.

### Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above.

---

[1] Terms of respondent's probation include, but are not limited to, restriction to his residence as directed by the probation officer, subject to curfew, and two hundred hours of unpaid community service.

Additionally, the committee found that respondent submitted a transcript into the record, post-hearing, of his sentencing before Judge Foote. During the course of the sentencing hearing, it was represented to Judge Foote that respondent had voluntarily surrendered his law license. However, there is nothing in the record of this disciplinary proceeding which indicates that the loss of respondent's license was voluntary.[2] This representation was made by respondent's counsel in the presence of respondent, and the transcript does not reflect that respondent corrected this false assertion. Judge Foote appeared to have been swayed by this assertion in her sentencing, as she expressly noted:

> **The Court is impressed with that humility and with your acceptance of responsibility for what you have done by voluntarily turning in your license** and by pleadings of the Bill of Information and based on the degree of cooperation that you have shown. [Emphasis added.]

The court record clearly reflects respondent's presence at all times during the sentencing proceeding. The assertion that his law license had been voluntarily surrendered was made twice, the second occasion coming after Judge Foote specifically inquired "And he voluntarily did that?" In reply, respondent's counsel stated, "He voluntarily did that, Judge. He voluntarily did that." Respondent was subsequently given an opportunity to address the court directly and no attempt was made to correct the false assertion.

In his post-hearing brief, respondent pointed to the apparent leniency of the court in the sentencing phase as grounds for deviating downward from the baseline sanction of disbarment. However, there is reasonable cause to conclude that the leniency was influenced at least in part by the false assertion that respondent had voluntarily surrendered his law license.

---

[2] On January 23, 2013, the ODC filed a petition for interim suspension based upon respondent's conviction of a serious crime. Respondent was served with the petition but did not file any response within the fifteen-day period set forth in Supreme Court Rule XIX, § 19(C). Accordingly, on February 8, 2013, we granted the ODC's petition for interim suspension.

As previously noted, respondent received $500 in cash, an autographed New Orleans Saints hat, clothing, and bicycles from Mr. Williamson. Respondent never brought any of this to the attention of the district attorney or to the other assistant district attorneys in his office. The cash payment was made in respondent's office at the 15th JDC, but respondent did not inquire with anyone at the office about the propriety of receiving the cash payment or other gifts. There is no evidence that he took any steps to even inquire if an investigation should be conducted into the conduct of Mr. Williamson.

It has been established through respondent's guilty plea, the nature of his charge and various other charges against other individuals involved with the scheme that there were benefits given through the actions of respondent that inured to the benefit of others. It was also established at the hearing that respondent did not have any relationship with Mr. Williamson, the one who provided the gifts and cash payment to respondent, and who ushered clients through the "expedited 894" proceedings in which respondent represented the 15th JDC. There was no evidence of any social or professional relationship with Mr. Williamson in respondent's private practice.

Despite his assertions that he did not know he was doing or intended to do anything wrong, and was not aware that there was any benefit being given, respondent's written consent to the charges establishing just the opposite belies his assertions. Respondent presented testimony through one witness that sought to place blame for his actions on District Attorney Michael Harson, who has never been charged with any wrongdoing. Moreover, and as previously discussed, respondent made no attempt whatsoever to bring any of the activity to the attention of Mr. Harson.

5

Respondent also testified that for a period of five years he handled over two hundred DWI cases in which he knew that Mr. Williamson was involved, that is, approximately forty cases per year.

The committee did not specifically discuss the Rules of Professional Conduct in its report, but found respondent's guilty plea conclusively established that he was guilty of intentional corruption of the judicial process as a result of his acceptance of bribes, and also guilty of malfeasance in office which resulted in a felony conviction involving fraud. The committee did not see sufficient or ample reason to deviate from the sanction of disbarment, which is the baseline sanction for an attorney convicted of a felony.

After considering respondent's conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this court's prior jurisprudence addressing similar misconduct,[3] the committee recommended he be permanently disbarred.

Respondent filed an objection to the hearing committee's recommendation, arguing that the sanction recommended by the committee was too harsh. Respondent also argued that the committee made factually unsupported assumptions and placed undue emphasis on the federal court's sentencing procedure. Respondent denied that he misled or attempted to mislead the sentencing federal judge.

---

[3] *See In re: Bell*, 11-1330 (La. 10/7/11), 72 So. 3d 825 (an attorney, in his role as a senior prosecutor in the Baton Rouge City Court, accepted bribes in exchange for "fixing" criminal and traffic matters pending in the court; permanent disbarment imposed), and *In re: Burks*, 07-0637 (La. 8/31/07), 964 So. 2d 298 (assistant city attorney for the City of New Orleans assigned to prosecute cases in traffic court accepted $1,000 to *nolle prosequi* traffic citations for an undercover FBI agent posing as a taxi driver; permanent disbarment imposed).

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. This includes the committee's consideration of the statements made in the federal sentencing transcript.[4] Based on these findings, the board determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.

The board determined respondent violated duties owed to the public and the legal profession. Respondent participated in a conspiracy that allowed others to misuse the DWI program in the 15th JDC. His failure to notify his superiors of the inappropriate behavior occurring with the DWI program allowed the criminal activity to continue. This caused harm to the public by casting a negative light on the criminal justice system in the 15th JDC. Respondent's criminal conviction also harmed the legal profession by casting it in a negative light. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is disbarment.

In aggravation, the board found a dishonest and selfish motive, a pattern of misconduct, substantial experience in the practice of law (admitted 1998), and illegal conduct. In mitigation, the board found the absence of a prior disciplinary record, full and free disclosure to the ODC and a cooperative attitude toward the proceeding, character or reputation, imposition of other penalties or sanctions, and remorse.

After considering respondent's conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this

---

[4] The board noted that the court considers the facts and circumstances surrounding a criminal conviction when determining an appropriate sanction. *In re: Kirchberg*, 03-0957 (La. 9/26/03), 856 So. 2d 1162. This would include the circumstances surrounding the sentencing phase of a conviction. Second, respondent moved to hold the record open to introduce the sentencing transcript into evidence. Thus, respondent was the party who introduced the facts he now argues the committee should not have considered. Accordingly, the board concluded the committee did not err in considering and making findings based upon the statements in the criminal sentencing transcript.

court's prior jurisprudence addressing similar misconduct, the board recommended he be permanently disbarred.

Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent's crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); *In re: Boudreau*, 02-0007 (La. 4/12/02), 815 So. 2d 76; *Louisiana State Bar Ass'n v. Wilkinson*, 562 So. 2d 902 (La. 1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Perez*, 550 So. 2d 188 (La. 1989).

Respondent pleaded guilty to conspiracy to commit bribery, which he committed while employed as an assistant district attorney for the 15th JDC. This crime is a felony under federal law and clearly warrants serious discipline. Indeed, in their respective reports, the hearing committee and the disciplinary board have concluded that respondent's offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.

We agree. In Appendix E to Supreme Court Rule XIX, the court set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of

8

conduct which might be considered worthy of permanent disbarment. For purposes of the instant case, Guidelines 2 and 7 are relevant:

> GUIDELINE 2. Intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury.
>
> GUIDELINE 7. Malfeasance in office which results in a felony conviction, and which involves fraud.

According to the bill of information filed against him, respondent corruptly accepted and agreed "to accept a cash payment in the amount of $500, as well as other things of value from currently uncharged co-conspirators, intending to be influenced and rewarded in connection with the transaction and serious of transactions of the District Attorney's Office for the 15th Judicial District Court." Respondent subsequently pleaded guilty as charged. His conduct clearly amounts to intentional corruption of the judicial process under Guideline 2. Guideline 7 is implicated as respondent's conduct led to his felony criminal conviction.

Turning to the jurisprudence of this court, the following cases are instructive and involve similar misconduct: *In re: Bell*, 11-1330 (La. 10/7/11), 72 So. 3d 825; *In re: Jackson*, 09-2354 (La. 2/12/10), 27 So. 3d 273; and *In re: Burks*, 07-0637 (La. 8/31/07), 964 So. 2d 298. In *Bell*, the respondent was employed as a senior prosecutor at the Baton Rouge City Court. He solicited and accepted bribes from individuals with criminal and traffic matters pending before that court in exchange for dismissing or otherwise "fixing" the charges. In *Jackson*, the respondent was an assistant city attorney for the City of New Orleans assigned to Traffic Court, where his duties included prosecuting DWI cases. Nevertheless, Jackson accepted $500 to represent a criminal client charged with DWI in Traffic Court. Prior to the client's arraignment and in his capacity as an assistant city attorney, Jackson entered a *nolle prosequi* in the case, effectively dismissing the charges against his client. In *Burks*, an assistant city attorney for the City of New Orleans assigned to

prosecute cases in Traffic Court accepted $1,000 to *nolle prosequi* traffic citations for an undercover FBI agent posing as a taxi driver. Each of these attorneys was convicted of felony criminal charges, and they were permanently disbarred under Guidelines 2 and 7.

Based on this jurisprudence and the aforementioned guidelines, we find that permanent disbarment is the appropriate sanction in this case. Accordingly, we will accept the disciplinary board's recommendation and permanently disbar respondent.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Gregory F. Williams, Louisiana Bar Roll number 25538, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

# SUPREME COURT OF LOUISIANA

## NO. 16-B-1253

## IN RE: GREGORY F. WILLIAMS, SR.

*ATTORNEY DISCIPLINARY PROCEEDINGS*

**WEIMER, J.**, concurs in the result.